UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
UNITED STATES OF AMERICA,             :
                                      :
              -v-                     :          10 Cr. 540 (JSR)
                                      :
WILLIAM JENKINS,                      :          MEMORANDUM
                                      :
              Defendant.              :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

    Defendant William Jenkins has been charged with violating Title 18, United States Code, Section 641, for allegedly using social security benefits sent to his mother's bank account after she died. Jenkins alleges that federal and state law enforcement agents colluded to conduct a warrantless search of his home and then used the illegally obtained evidence to support the issuance of warrants. On July 21, 2010, pursuant to Federal Rules of Criminal Procedure 12(b)(3) and 41, Jenkins moved to suppress all evidence seized or derived from these allegedly unlawful searches. After receiving briefing from both parties, the Court conducted an evidentiary hearing on September 16, 2010 and heard oral argument on September 17, 2010. On September 20, 2010, the Court issued a "bottom-line" Order denying the defendant's motion to suppress.[1] This Memorandum explains the reasons for that ruling.

---

[1] On September 30, 2010, following the issuance of the bottom-line Order, the defendant pleaded guilty to converting social security benefits. Sentencing is scheduled for February 7, 2011.

By way of background, in the Spring of 2010, federal agents were investigating Jenkins in connection with an allegation that he had improperly converted social security funds sent to his mother's bank account after her death. At the same time, the police in Jackson Township, New Jersey, were investigating a burglary that had occurred in the Jenkins home in May 2009 and whether a fraudulent insurance claim had been filed in connection with that burglary. On the morning of May 10, 2010, federal agents went to arrest Mr. Jenkins at his home in New Jersey on the federal charges. Decl. of William Jenkins (July 14, 2010)("Jenkins Decl"), ¶ 4. The federal agents requested permission to search for documents and Mr. Jenkins signed a consent form for a limited search of the "master bedroom, night stands, and dressers, file cabinet and guest bedroom closet for Florence Jenkins' death and Chase bank records." Id. ¶ 5.

Detective Michael Kelly, a Jackson Township police officer, accompanied federal agents to Mr. Jenkins' home. Aff. for a Search Warrant, Detective Michael S. Kelly ("Kelly Aff."), at 4; Jenkins Decl. ¶ 6. The defendant claims that Kelly "colluded" with federal agents and only accompanied them to find evidence relating to the insurance fraud investigation. See Def. Mot. in Limine and Mem. in Support Thereof to Suppress Evidence Based upon an Illegal Search and Seizure ("Def. Mem.") at 1, 2, 7. Kelly claims that he was there to

2

assist federal agents with the arrest. See Transcript, 09/16/10, at 4-5.[2]

Once inside Jenkins's home, Kelly discovered what he believed was evidence of the alleged insurance fraud, as well as various pills that tested positive for opiates. Id. at 12-13, 21. Kelly testified that he observed in plain view various items he believed the Jenkins had previously reported as stolen, including a black digital camera and a diamond ring. Id. at 21, 60. Kelly also testified that he learned that the federal agents (who were conducting a search of Jenkins's bedroom pursuant to Jenkins's consent) had discovered passports and a birth certificate that Kelly also believed had been reported as stolen. Id. at 12-15. Kelly included this information in an affidavit for a state search warrant and subsequently obtained such warrant. See Affidavit for a Search Warrant, Michael S. Kelly (May 10, 2007) ("Kelly Aff."). It was later discovered that the digital camera and the diamond ring that Kelly observed in the Jenkins home were not the ones that the Jenkins had previously reported as stolen. Transcript, 9/16/10, at 33, 39, 49.

After obtaining the state search warrant, Kelly along with other Jackson police officers returned to the Jenkins home to conduct

---

[2] According to Anthony Mangarella, a special agent with the U.S. Department of Education, federal agents will often invite local authorities to assist in executing arrest warrants because local officers have access to additional resources and are more familiar with the jurisdiction where the arrest is taking place. Id. at 130.

3

a search for evidence of insurance fraud.  The federal prosecutor then asked Jenkins' attorney whether Jenkins would consent to a search by federal agents, and Jenkins refused to consent.  Jenkins Decl., ¶ 10.  Meanwhile, while Kelly and other Jackson police officers conducted their search for items relating to the insurance fraud charge, they discovered a wallet containing various benefit and identification cards for Florence Jenkins as well as Chase Bank statements.  See Aff. in Support of Application for Search Warrant, Jeremy D. Hunt (May 10, 2007) ("Hunt Aff."), at 7.  This information was communicated to Jeremy Hunt, a federal agent, and Hunt used this information in an affidavit to secure a search warrant to search for evidence of social security fraud.  Id. at 7, 9-10.  Pursuant to the federal warrant, another search was conducted and evidence was obtained that the government seeks to use in this trial.

    The defendant argues that all of the seized evidence relating to the crime here charged must be suppressed because it is the fruit of an illegal search and seizure.  The defendant contends that Detective Kelly only participated in the search in order to find evidence of the state insurance fraud claim and thus that anything he saw or found could not be used in his affidavit to obtain a state search warrant.  Moreover, the defendant argues that even the evidence seized by federal agents, including the passports and the birth certificate, should be suppressed because, while the federal agents had Jenkins's consent to search the dresser for Florence

Jenkins's bank records and death certificate, these agents were not permitted to open up the passports or the birth certificate, since there was no consent to search for these items.

Even assuming arguendo that most of the evidence listed in Kelly's affidavit, including the jewelry, the passports, and the camera, was either illegally obtained or insufficient to establish probable cause, the Court would still find that the state search warrant was valid, based on the fact that the birth certificate was lawfully seized. It is undisputed that the federal agents had permission to search Williams Jenkins's bedroom for Florence Jenkins's death certificate. While the federal agents opened up the document that turned out to be a birth certificate, it was entirely reasonable for the federal agents to open this document in order to find out whether it was Florence Jenkins's death certificate. Since this very birth certificate had been reported as stolen, the birth certificate alone would constitute probable cause for a state search warrant. While it is true that Detective Kelly incorrectly listed the birth certificate as belonging to Christopher Pottinger rather than Phillip Jenkins, see Kelly Aff. at 3, this fact is immaterial. It is undisputed that the birth certificate actually discovered by federal agents -- Phillip Jenkins's birth certificate -- was one of the birth certificates that the Jenkins had reported as stolen. See Jackson Township Police Department Victim Property Loss Report (May 7, 2009); Transcript, 09/16/10, at 39-40. Since a birth certificate

5

that had been reported stolen was discovered by federal agents, the fact that the birth certificate in fact belonged to Phillip Jenkins rather than Christopher Pottinger would not have affected the decision to issue the search warrant.

From the fact that the state search warrant was validly obtained, it follows that the federal search warrant was similarly validly obtained. Thus, any evidence discovered pursuant to either the state search or the federal search could properly be admitted at trial.

Accordingly, the Court affirms its previous Order denying the defendant's motion to suppress.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       November 9, 2010